FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 02 2006

JAMES R LARSEN, CLERK
DEPUTY
YAKIMA, WASHINGTON

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PATRICIA A. LONG and AMARIS J. LONG,<br><br>Plaintiffs<br><br>v.<br><br>PEND OREILLE COUNTY, GERALD WEEKS, individually and as Pend Oreille County Sheriff, ALAN BOTZHEIM, individually and as Pend Oreille County Deputy Sheriff, QUESTIN YOUK, individually and as Pend Oreille County Deputy Sheriff, THOMAS A. METZGER, Pend Oreille County Prosecutor, THOMAS M. FRANKLIN, an individual, and DEAN YONGUE, and individual, Does 1 through III, individuals.<br><br>Defendants. | No. CV-04-0344-AAM<br><br>**ORDER GRANTING PEND OREILLE COUNTY DEFENDANTS' MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT FRANKLIN'S MOTION TO DISMISS** |

This case involves a 42 U.S.C. § 1983 lawsuit filed by the Plaintiffs against the Pend Oreille County Sheriff's Department and five individual county employees – Sheriff Gerald Weeks, Deputy Alan Botzheim, Deputy Ronald Froman, Deputy Questin Youk, and Prosecuting Attorney Thomas Metzger ("the Pend Oreille County Defendants"). In addition, the suit names two individual non-government defendants, Thomas M. Franklin and Dean Yongue.

**BEFORE THE COURT** are the Pend Oreille County Defendants' Motion for Summary Judgment (Ct. Rec. 40); the Pend Oreille County Defendants' Motion

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -1**

to Strike Frank H. Saunders and All Claims of Mental, Psychological, or Emotional Distress Damages (Ct. Rec. 88); and Defendant Franklin's Motion to Dismiss (Ct. Rec. 96). Franklin joins in the arguments made in the summary judgment motion of the County Defendants. On September 25, 2006, the Court heard oral argument. John Bardelli appeared on behalf of the Plaintiffs. Christopher Kerley appeared on behalf of the County Defendants. Matthew Sanger appeared on behalf of Defendant Franklin. Having considered the parties' oral argument and written submissions, for the reasons set forth below, the Court grants the motions.

## I.    Pend Oreille County Defendants' Motion to Strike Frank H. Saunders and All Claims of Mental, Psychological, or Emotional Distress Damages

### A. Expert Designation

The Pend Oreille County Defendants have moved the Court to strike the Plaintiffs' designation of Frank H. Saunders as their expert and to disregard his declaration submitted in opposition to the Motion for Summary Judgment. Plaintiffs have not filed a response to this motion.

Plaintiffs admit Saunders was not identified and designated as an expert until approximately June 13, 2006, well after the May 26, 2006 deadline for disclosure of all Fed. R. Civ. P. 26(a)(2)(B) expert reports. To date, Plaintiffs have not submitted a proper expert report as required by Rule 26(a)(2)(B).[1] Plaintiffs' failure to provide a timely expert report denied the Pend Oreille County Defendants notice of

---

[1] Fed. R. Civ. P. 26(a)(2)(B) provides that parties must disclose each expert who may appear at trial and the disclosure must be accompanied by a written report containing a complete statement of all opinions to be expressed by the expert. On August 16, 2006, Plaintiffs filed a pleading entitled "Plaintiffs' Supplemental FRCP 26(a) Mandatory Disclosures", providing a list of Saunders' prior deposition and trial testimony. This pleading does not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B).

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -2**

Saunders' opinions and the data and reports upon which such opinions are based.

In order to exclude evidence under Fed. R. Civ. P. 37(c)(1), the Court must find that the Rule 26(a) violation was both unjustified and prejudicial to the defendants:

> A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence ... on a motion ... information not so disclosed.

A party must provide the names of expert witnesses it expects to call before the close of discovery. *See Derby v. Godfather's Pizza, Inc.*, 45 F.3d 1212, 1214 (8th Cir. 1995) (excluding an expert because the plaintiff failed to timely disclose expert's identity). Plaintiffs have failed to respond to this motion, let alone show how their failure to timely name this expert is harmless. Though delay in obtaining Defendants' depositions may have caused the Plaintiffs delay in obtaining Saunders' opinion, the Court was never made aware of any need for an extension of the Court imposed deadline. The prejudice suffered by the Defendants is attributable to the fact that the deadlines for discovery and the filing of dispositive motions under the scheduling order have elapsed. To allow Plaintiffs to violate the requirements of Rule 26(a)(2)(B) and designate an expert at this late date would be prejudicial and cause a substantial hardship to the Defendants.

Accordingly, the Court **GRANTS** the County Defendants' motion and strikes the Plaintiffs' designation of Frank H. Saunders as an expert witness, and excludes his declaration filed in opposition to the motion for summary judgment. *See Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)(upholding the district court's exclusion of expert testimony where the defendant disclosed the expert's report outside the time provided by Rule 26(a)(2)).

## B. Claims of Mental Psychological or Emotional Distress Damages

Defendants also move the Court to dismiss all claims of mental,

psychological and emotional distress damages as a sanction for Plaintiffs' failure to comply with the deadline for disclosure of psychological testing and Social Security records. Because the Court herein resolves all liability issues in favor of the Defendants, their motion is moot. However, if the Court would have been required to rule on the merits of the request, it would have found dismissal of Plaintiffs' claims for mental, psychological and emotional distress damages a suitable sanction for Plaintiffs' blatant failure to disclose the necessary records to the Defendants as required by this Court's order. Plaintiffs' disclosure of the signed releases after the end of discovery and nearly four months after the Court imposed deadline is inexcusable and prevented Defendants from being able to conduct reasonable investigation and discovery regarding these claims. The dismissal of these claims, though a severe sanction, would have been justified given the gross failure to comply. *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto* Rico, 248 F.3d 29, 34 (1st Cir. 2001)(upholding the use of the sanction even when a litigant's entire cause of action or defense has been precluded). Furthermore, Plaintiffs did not even respond to this motion. *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction.").

## II.    Pend Oreille County Defendants' Motion for Summary Judgment and Defendant Franklin's Motion to Dismiss

The Pend Oreille County Defendants and Defendant Franklin have moved for judgment on all claims asserted against them. The Court will henceforth collectively refer to the movants as the "Defendants." Individual references to"Long" refer to Plaintiff Patricia Long.

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -4**

**A. FACTS**[2]

The facts which form the basis of this lawsuit emanate from a property boundary dispute between two neighbors. At all times relevant to this litigation, Plaintiffs, Patricia Long and Amaris Long, were the co-owners of a 40-acre parcel located off Highway 20 in Pend Oreille County, Washington. The Longs' property shared a common boundary with property owned, at all times relevant to this litigation, by Defendant Franklin. Patricia Long's two sons, Robert Coward (and his wife and children) and Gary Coward, resided on her property.

On September 1, 2002, Franklin called the Pend Oreille County Sheriff's Department regarding an existing boundary dispute on his adjoining acreage with the Longs. Defendant Deputy Questin Youk was assigned to the call and investigated the matter by meeting with Franklin. Franklin explained to Youk that he believed the Longs' existing fence and water tanks were on his property. Youk saw where a survey monument had been placed. Youk advised Franklin that the dispute was possibly a civil action because of the older existing fence line. Franklin complained that he was missing fence posts that he had placed along what he believed to be the proper common boundary.

Youk contacted Gary Coward who admitted having pulled up the fence posts because he believed they were on his mother's property. Youk advised Coward to remain off the contested property until the dispute could be resolved in the civil courts. Franklin contacted Youk again at the end of September 2002 to advise him that he was going to conduct another survey of the property on October 12, 2002. Youk contacted Long and advised her of Franklin's complaint and his intent to have the property surveyed again. She claimed that Franklin had threatened to tear down the four one-thousand gallon water tanks which apparently serve her property and a residence on the premises. On October 1, 2002, Long responded by writing a letter

---

[2]The following facts are undisputed, unless otherwise noted.

ORDER GRANTING MOTIONS TO
STRIKE AND FOR SUMMARY JUDGMENT -5

to Pend Oreille County Sheriff Gerald Weeks advising him of the threatened destruction of her water supply, that Franklin had erected barriers across the Public Utility District (PUD) right of way, that her property was posted with no trespass signs, and that she thought Franklin's barriers were unsafe. In addition, Long requested the Sheriff intercede in the dispute and direct Franklin to cease entering onto her land. Long did not receive a response from Weeks.

On October 11, 2002, after receiving a call from Franklin, Youk again met with Franklin who advised Youk that Long was repairing the old fence, was cutting a path through trees, and was putting up no trespassing signs on what she claimed was her property boundary. Youk told Franklin he was going to send a report to Prosecuting Attorney Thomas Metzger. Youk attempted to contact Metzger, but was unable to reach him. After speaking with Franklin, Youk then discussed the matter with Long. Long advised Youk it was her belief that she had acquired the disputed property by adverse possession.

Because of the apparent potential for escalation of the boundary dispute, on Saturday, October 12, 2002, at approximately 9:30 a.m., Youk, Sgt. Alan Botzheim, and Deputy Ronald Froman drove separate patrol cars to Franklin's property, intending on participating in a "civil standby" while the survey occurred. Also in attendance was surveyor, Defendant Dean Yongue from North County Surveys. Yongue advised Sgt. Botzheim he was a licensed surveyor in Washington and Idaho and that he had done a survey of the property in 1998 that was on file with the County.

Franklin showed Sgt. Botzheim a copy of a survey completed in 1998 and filed with the County which showed an old fence line that was inside of, or to the north of the southern boundary of Franklin's property. Franklin told the officers that Long, however, claimed the old fence line represented the boundary between the two properties, and that she, or someone on her behalf, had installed a locked gate on the old fence line where it intersected with a PUD power line road.

**ORDER GRANTING MOTIONS TO**
**STRIKE AND FOR SUMMARY JUDGMENT  -6**

Franklin was concerned because "Long had four or five people stationed along the old fence line" (which he believed was on his property) and that she had placed no trespassing signs on the gate.

Having been advised the surveyor was coming, Long was present at the property when the surveyor, Franklin, and the law enforcement officers arrived. Sgt. Botzheim and Youk began walking on the power line road toward the fence and gate. A red car with Idaho plates was parked a short distance away on the other side of the gate. The occupant began honking the horn, and at that point several people emerged from the brush/woods on the other side of the gate. Sgt. Botzheim began to cross the gate and an adult male with a video camera, Leonard Browning, told Long to tell Sgt. Botzheim to get off her property, which Long proceeded to do. Sgt. Botzheim continued on and explained who he was and why he was there, advising Long that he had been shown a survey showing the property she was ordering him off belonged to Franklin. Sgt. Botzheim asked Long if she had anything to contradict that information and Long responded that she was not going to show him anything, but that she did have information which she would save for court. Long advised that the fence had been in existence for 25 years. Browning continued to videotape, advising Sgt. Botzheim and Youk that he was there to assist Long, that he was with the "Concerned Citizens Against Government Corruption," and that the officers were trespassing. (Long is not a member of this group). Sgt. Botzheim asked Franklin to cross the fence and to again show him the surveyed property line.

Based on the survey map and the comments of Yongue and Franklin, Sgt. Botzheim believed Long and the other members of her group were on Franklin's property. Because he believed they were trespassing, Sgt. Botzheim advised Long and her group they would have to step back across what he believed to be the boundary line.

The parties' versions of events differ from here on. It is disputed whether

**ORDER GRANTING MOTIONS TO**
**STRIKE AND FOR SUMMARY JUDGMENT  -7**

Franklin asked Long and her group to leave the property.  Long denies Franklin spoke to her.  The Defendants assert he asked her to leave.[3]  Long contends Sgt. Botzheim then grabbed her arm and started pushing her while telling her to move or be arrested.  She claims Sgt. Botzheim then put her arm behind her back and repeated the warning.

Long was never shown a survey or survey marker.  Long refused to comply with Sgt. Botzheim's request that she step back and leave the property.  Sgt. Botzheim advised that she would have to leave or be arrested.  Sgt. Botzheim then placed Long under arrest for Second Degree Criminal Trespass.  Long claims Sgt. Botzheim shoved her hands behind her back and placed handcuffs on her.  She claims that while doing that, Sgt. Botzheim hurt her wrists, shoulder, and right thumb.  Deputy Froman walked her back to his patrol car and transported her to jail.  Long claims she was roughly pushed down the hill to the car.

Sgt. Botzheim believed probable cause existed based on his review of the survey map, the comments of Yongue and Franklin, and Long's refusal to leave the property.  Following Long's arrest, Sgt. Botzheim asked the surveyor to come to his location and to locate the survey monument in the area.  Yongue discovered the monument had been removed.  Youk and Franklin confirmed where the monument/marker had been weeks prior.  During this time, Browning made confrontational comments about suing the officers, Yongue, and Franklin, and arresting them, and sending them to jail.  Sgt. Botzheim overheard Browning ask

---

[3] Interestingly, the allegations in the Plaintiffs' Complaint would tend to support Defendants' version of events here.  It states, "When Plaintiff Patricia Long verbally addressed Defendant Botzheim in an attempt to stop him and his agents from trespassing upon and destroying her property, *Defendant Alan Botzheim acted at the direction of Defendant Franklin*, assaulted Plaintiff Patricia Long by grabbing her arm, and ordering Defendant Froman to arrest Plaintiff Patricia Long."  Complaint at 4 (emphasis added).

**ORDER GRANTING MOTIONS TO**
**STRIKE AND FOR SUMMARY JUDGMENT  -8**

Robert Coward on the scene to make a phone call.  Coward called 9-1-1 and requested the U.S. Marshal to respond because there were armed men on their property without authority who claimed to be law enforcement.  Browning was coaching Coward on what to say.

Sgt. Botzheim is the primary coordinator for training and educating officers. Neither Sgt. Botzheim or Youk have had specific training in property and boundary disputes, however Sheriff Weeks indicated that property boundary disputes are usually handled civilly.  The County investigates complaints of ongoing trespass and if the officer witnesses the trespass, circumstances usually dictate that the person is asked to leave and ocassionally an arrest is necessary.

### B. PROCEDURAL HISTORY

On September 23, 2004, Plaintiffs began this action without counsel and filed a Complaint *pro se*.  On January 3, 2005, Plaintiffs filed a pleading entitled "Plaintiffs' Rico Statement" alleging the City of Newport and Pend Oreille County engaged in racketeering activities.  On October 31, 2005, attorney John Bardelli filed a Notice of Appearance on behalf of the Plaintiffs.   No motion to amend was ever filed and accordingly, the original *pro se* Complaint still stands.

*Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Based on the facts alleged in the Complaint, Plaintiffs assert Defendants deprived them of certain constitutional rights in connection with the County's investigation of the boundary dispute and Patricia Long's arrest and subsequent incarceration on October 12, 2002. Plaintiffs' legal claims are not are not distinctly pled in the Complaint.  The factual allegations of the pleadings may, however, be liberally construed as stating the following claims: (1) deprivation of property rights; (2) unlawful arrest; (3) excessive force in connection with Long's arrest, (4) conspiracy; (5) supervisory liability; (6) failure on behalf of the Prosecuting Attorney to initiate criminal

**ORDER GRANTING MOTIONS TO
STRIKE AND FOR SUMMARY JUDGMENT  -9**

prosecution; (7) municipal liability; (8) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO); and (9) common law tort claims of trespass, false arrest, false imprisonment, battery, and conversion.

On February 10, 2006, the Pend Oreille County Defendants moved for summary judgment on Plaintiffs' claims, characterizing them as primarily alleging violations of 42 U.S.C. § 1983, RICO, and common law tort. On August 31, 2006, Defendant Franklin filed a Motion to Dismiss basing his motion entirely on the arguments asserted by the County Defendants.

### C. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Though Defendant Franklin styled his motion as one to dismiss under Fed. R. Civ. P. 12(b)(6), he requests dismissal upon identical legal grounds as asserted by the County Defendants in their motion for summary judgment. Because

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT  -10**

the County Defendants have submitted materials outside the pleadings in support of their motion, and the Court has referred to them in ruling on the motion, the Court will analyze both motions singly under the standards of Rule 56. The Court sees no prejudice in doing so, especially since the Plaintiffs have not filed a separate response to Franklin's motion.

### D. DISCUSSION[4]

#### 1. 42 U.S.C. § 1983 Claims

To sustain an action under § 1983, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. *Balisteri*, 901 F.2d at 699. The Defendants claim entitlement to summary judgment, arguing the law enforcement officers did not violate any constitutionally protected right of Plaintiffs. They also allege they are entitled to qualified immunity.

Qualified immunity shields government officials, including law enforcement officers, who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (extending the privilege of qualified immunity to police officers). When confronted with a claim of qualified immunity, a court must first

---

[4] The Court is troubled by the late filing of Plaintiffs' memorandum in response to the motion for summary judgment, despite several continuances. As Defendants point out, the Court's local rules allow the Court to construe an untimely opposition as consent to a motion for summary judgment. L.R. 7.1(h). Nonetheless, under Fed. R. Civ. P. 56, the court may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Accordingly, the Court will address the merits of the pending motions.

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -11**

ask the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

"On the other hand, if a violation could be made out [under the first inquiry] on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Under this standard, if a law does not put an "officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate" for those claims stemming from violations of that law. *Id.* In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In addition, an officer is immune from suit even when he makes a constitutionally deficient decision, if he reasonably misapprehended the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206). This exception is premised on the fact that it is sometimes difficult for an officer to determine how a particular legal doctrine applies to the factual situation he faces. *Saucier*, 533 U.S. at 205. In these situations, if "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* As a result of the above-described standards, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

//

//

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -12**

### a. Right to be Present

Defendants contend that Plaintiffs' § 1983 claims must fail because they have not sufficiently demonstrated that Long actually had a right to be on the property she was standing on at the time of her arrest. Essentially, the Defendants claim Long must establish she was not in fact trespassing at the time of her arrest in order to be successful on her §1983 claims. The Court disagrees. The relevant question in a §1983 claim based upon false arrest is not whether the person arrested can or cannot establish she did or did not in fact commit the offense in question, but rather whether the officers had probable cause to believe the person arrested had committed the offense. The determination of the existence of probable cause to arrest for trespass does not in any way hinge on the arrestee's actual right to be present on the premises. The case relied upon by the Defendants, *Skipper v. Phipps*, 483 F.Supp. 1213 (D.C. Fla. 1980), is distinguishable from this case because *Phipps* did not involve an actual arrest and the constitutional right claimed to have been violated was the plaintiffs' right to use public land. The right to be present on the premises is not a relevant consideration with regard to the facts of this case.

### b. Deprivation of Property

Plaintiffs' Complaint alleges the Defendants damaged and/or destroyed their property including their north boundary fence, gate, the padlock and chain holding the gate, fence posts, wire, and no trespassing signs. To state a claim under 42 U.S.C. § 1983 for deprivation of property without procedural due process, a plaintiff must allege that state post-deprivation remedies are inadequate. The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (where State cannot foresee, and therefore provide meaningful hearing prior to deprivation, statutory provision for

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -13**

post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process); *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986) (same). Washington law provides such an adequate post-deprivation remedy under its tort claims procedure, RCW 4.92.010, and thus, Plaintiffs do not have a §1983 claim based upon the alleged destruction of or damage to property.

### c. *Unlawful Arrest*

Defendants seek summary judgment on Long's claim of unlawful arrest on the basis that Sgt. Botzheim had probable cause to arrest Long for criminal trespass and even if he did not, he is entitled to qualified immunity. The law was clearly established regarding Long's right to be free from arrest for criminal trespass absent probable cause when the events described herein took place. The Court must therefore determine wether a reasonable officer could have believed his conduct was lawful "in light of the specific context of this case." *Saucier*, 533 U.S. at 201. Taking the facts in the light most favorable to Long, the inquiry in this case is whether a law enforcement officer with the information known to Sgt. Botzheim could reasonably have believed he had probable cause to arrest Long for criminal trespass.

Probable cause exists when " 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.' " *Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir. 2001) (quoting *Beck v. Ohio*, 379 U.S. 89 (1964)). Police must show only that, " 'under the totality of the circumstances,' " "'a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.' " *United States v. Valencia Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002) (quoting *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992)).

Long was arrested for second degree criminal trespass. Under Washington

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -14**

law, RCW 9A.52.080, criminal trespass is defined as follows:

(1) A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree [knowingly entering or remaining unlawfully in a building].

(2) Criminal trespass in the second degree is a misdemeanor.

Based on the comments of the surveyor and his own review of the survey, Sgt. Botzheim had sufficiently reliable evidence to cause him to believe that Long did not have the right to be on the property. Plaintiffs clarified during oral argument that although Youk had made an investigation and attempted to inquire of Prosecuting Attorney Metzger, there is no evidence that Sgt. Botzheim had any knowledge of the details of Youk's prior contacts with Long and Franklin. The record shows Sgt. Botzheim, as the most senior officer present, was responding to the immediate circumstances which were presented to him on the morning of October 12. Sgt. Botzheim had sufficient cause to believe Long was committing the offense of criminal trespass after she refused to leave the property after having been asked at least twice to do so. Sgt. Botzheim was not required or permitted to determine on the spot whose assertion of ownership was in fact correct. *See Kelley v. Myler*, 149 F.3d 641 (7th Cir. 1998)("Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digests on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law"). An officer is not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already exists. Even if Sgt. Botzheim made a mistaken determination regarding the property line, and regardless of the ultimate disposition of the criminal charges against Long, there was clearly probable cause for him to believe that Long was trespassing and to arrest her, given her defiant refusal to obey his repeated requests to step off property he reasonably believed belonged to Franklin.

Even if probable cause were lacking, Sgt. Botzheim would be entitled to

**ORDER GRANTING MOTIONS TO**
**STRIKE AND FOR SUMMARY JUDGMENT -15**

qualified immunity because a reasonable officer could have mistakenly believed that probable cause existed. "It is inevitable," the Supreme Court has reminded us, "that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials-like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable." *Anderson*, 483 U.S. at 641.

Finally, Plaintiffs' response to the motion does not even mention a false arrest claim, let alone provide any basis for ruling in Plaintiffs' favor. Thus, there is no genuine issue of material fact regarding Plaintiffs' claim for unlawful arrest. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' unlawful arrest claim under § 1983.

### d. Excessive Force

Though the Defendants did not specifically address excessive force in their motion for summary judgment, they have requested judgment on all claims asserted against them. The Court possesses the power to enter summary judgment *sua sponte*, "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp.* 477 U.S. at 326. Because the discovery and dispositive motion deadlines have now passed, and the Plaintiffs have argued their position both in writing and orally at the motion hearing, it is reasonable to assume Plaintiffs have come forward with all of their evidence on this claim.

Excessive force claims are analyzed under the Fourth Amendment's "objectively reasonable" test. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989*)*. " ' [T]he right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' " *Muehler v. Mena*, 544 U.S. 93, 99 (2005), quoting *Graham*, 490 U.S. at 396. The force, however, must be "objectively reasonable" in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation. *Graham*, 490 U.S.

**ORDER GRANTING MOTIONS TO**
**STRIKE AND FOR SUMMARY JUDGMENT  -16**

at 397. The use of handcuffs is warranted in inherently dangerous settings to minimize the risk of harm to suspects, officers and innocent third parties. *Muehler*, 544 U.S. at 100.

Long alleges Sgt. Botzheim grabbed her arm and started pushing her while telling her to move or be arrested. She claims Sgt. Botzheim then put her arm behind her back and repeated the warning. Finally, she says he shoved her hands behind her back and placed handcuffs on her. In doing that, she claims he hurt her wrists, shoulder, and right thumb. Long says she was roughly pushed by Deputy Froman to the police car. At the motion hearing, Plaintiffs asserted that because Long's arrest was unlawful, any amount of force used constituted excessive force.

Because Sgt. Botzheim had probable cause to arrest Long for trespass, Plaintiffs' argument that any amount of force would be unreasonable necessarily fails. In addition, the alleged injuries reflecting only minimal force are insufficient to qualify as constitutionally excessive or overcome the officers' entitlement to qualified immunity. *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (Police officer's use of force against arrestee was de minimis, and thus, officer did not lose his qualified immunity from arrestee's § 1983 claim alleging excessive force; officer grabbed arrestee and shoved him a few feet against a vehicle, pushed his knee into the arrestee's back and pushed arrestee's head against the van, searched arrestee's groin area in an uncomfortable manner, and placed the arrestee in handcuffs); *Bowles v. State*, 37 F. Supp. 2d 608, 612 (S.D.N.Y. 1999) (In § 1983 action, arrestee failed to state claim of use of excessive force, where arrestee merely alleged that he was pushed and shoved by officer during search incident to arrest).

### e. *Right to be free from harm once in custody / Duty of custodial officers to protect those in custody*

Citing *U.S. v. Koon*, 34 F.3d 1416 (9th Cir. 1994), Plaintiffs assert in their response brief that Long's right to be free from harm once in custody was violated. This claim was not set forth in the Complaint. The duty of other officers to

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -17**

intervene exists only if the officers actually using force were violating a plaintiff's constitutional rights.  See, e.g., *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2nd Cir. 2001) (where arresting officers committed no infringement, the logic of *Heller*[5] would appear to preclude liability against bystander officers).  Because the force used in this case was not constitutionally excessive, the other officers cannot be held liable for failure to intervene or protect.  *Id.*  Moreover, officers who are present, but who have no opportunity to prevent a sudden and brief assault, may not be held liable for an attack.  *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.  1990); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997) (no liability where no realistic opportunity to intervene to prevent the use of excessive force); *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996) (where officer "had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect [plaintiff], and the obligation to take steps to protect him never arose.").

### f.  *Supervisory Liability Claims Against Defendants Weeks and Metzger*

Plaintiffs' Complaint alleges Defendant Weeks violated their civil rights by refusing to "halt his deputies from their illegal acts" despite having been notified by letter of the ongoing property dispute.   In addition, Plaintiffs allege liability against Metzger for refusing to prosecute the Defendants who "trespassed upon, destroyed and stole Plaintiff Longs' (sic) property. . . ."  Complaint at 6.  These claims are derivative of Plaintiffs' claims against the Defendant officers.  Because the Plaintiffs have failed to demonstrate they suffered a constitutional violation, Defendants Weeks and Metzger cannot be liable in a supervisory capacity.

Even if Plaintiffs could demonstrate that a constitutional violation occurred, Metzger is entitled to absolute immunity under § 1983 because his refusal to

---

[5] *City of Los Angeles v. Heller*, 475 U.S. 796 (1986).

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -18**

prosecute was intimately tied to the judicial process. *Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997).

### g. Conspiracy

Plaintiffs allege the Defendants conspired to violate their constitutional rights. Plaintiffs have not shown any "actual deprivation of [their] constitutional rights resulted from the alleged conspiracy." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citations omitted). Accordingly, Defendants, including the non-governmental Defendants, Franklin and Yongue[6], are entitled to summary judgment on Plaintiffs' conspiracy claim.

### h. Municipal Liability Claims Against Pend Oreille County

A local government may be sued under § 1983 when an injury is inflicted as a result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). One way a plaintiff may demonstrate municipal liability for a constitutional violation is by showing that the violation occurred as a result of inadequate training, or the failure to take disciplinary action, or to prevent known abuses on the part of the municipality. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

In order to establish a claim under § 1983 due to inadequate training, the Plaintiffs must provide evidence from which a reasonable jury could find that there was an inadequate training program, and that Pend Oreille County was deliberately indifferent to whether its officers received adequate training. There must also be an actual causal link between the inadequate training and the deprivation of

---

[6]   In addition, at the motion hearing, Plaintiffs' counsel indicated he had been advised Yongue had filed for bankruptcy. The parties conceded that if this were the case, Yongue should be dismissed as a party.

**ORDER GRANTING MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT -19**

1    constitutional rights.  *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir.
2    1989).
3        Plaintiffs have made only conclusory allegations that the County failed to
4    adequately train its officers.  Plaintiffs have presented no evidence showing that the
5    County failed to adequately train its police officers in the use of force or that the
6    County had any knowledge of a substantial likelihood that citizens' federal rights
7    would be violated. In addition, there is no evidence showing that the alleged
8    inadequate training caused any deprivation of Plaintiffs' constitutional rights.
9        Failure to discipline was not pled in the Complaint.  In any case, "isolated
10   instances of official misconduct are insufficient to establish municipal liability
11   under Monell." *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997)
12   (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). Only the failure to fire or
13   reprimand officers in light of "a blatantly unconstitutional course of treatment" can
14   serve as "persuasive evidence of deliberate indifference or of a policy encouraging
15   such official misconduct." *Id.* at 520.   Because Plaintiffs cannot demonstrate a
16   violation of their constitutional rights, the County cannot be held liable for failure
17   to discipline.

18
19   **2. RICO Claims**
20       The Defendants also move for summary judgment on Plaintiffs' RICO
21   claims.  Plaintiffs did not respond to the request for summary judgment on these
22   claims and, accordingly, have conceded summary judgment is appropriate.  In any
23   case, the Complaint does not specifically set forth a RICO claim and the conclusory
24   allegations against the County and the City of Newport (not a named defendant) set
25   forth in "Plaintiffs' Rico Statement" may be summarily rejected because
26   "government entities are incapable of forming [the] malicious intent" necessary to
27   support a RICO action. *Lancaster Community Hosp. v. Antelope Valley Hosp.*, 940
28   F.2d 397, 404 (9th Cir. 1991), cert. denied, 502 U.S. 1094 (1992).

**ORDER GRANTING MOTIONS TO
STRIKE AND FOR SUMMARY JUDGMENT  -20**

## III.  Conclusion

Summary judgment for all named Defendants on all of Plaintiffs' federal constitutional claims is appropriate because Plaintiffs have failed to offer sufficient evidence to raise a genuine issue of material fact that any of their federal constitutional rights were violated.  Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction."  As there are now no viable federal claims left in this case, the Court declines supplemental jurisdiction over Plaintiffs' state law claims.

Accordingly, **IT IS HEREBY ORDERED** that:

1.  The Pend Oreille County Defendants' Motion To Strike Frank H. Saunders and All Claims Of Mental, Psychological, or Emotional Distress Damages (Ct. Rec. 88) is **GRANTED** in part, and is **MOOT** on the issue of damages.

2.  The Pend Oreille County Defendants' Motion for Summary Judgment (Ct. Rec. 40) is **GRANTED**.

3.  Defendant Franklin's Motion to Dismiss (Ct. Rec. 96), treated as a Motion For Summary Judgment, is **GRANTED**.

4.  All named defendants are awarded summary judgment on all of Plaintiffs' claims asserted under 42 U.S.C. §§ 1983 and 1985, and RICO.

5.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and those claims are **DISMISSED** without prejudice.

The District Court Executive is directed to enter judgment in favor of the Defendants, file this Order, provide a copy to counsel for Plaintiffs and the Defendants, and **CLOSE** this file.

**DATED** this _____ day of October, 2006.

ALAN A. McDONALD
SENIOR UNITED STATES DISTRICT JUDGE

**ORDER GRANTING MOTIONS TO**
**STRIKE AND FOR SUMMARY JUDGMENT  -21**