UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PATRICIA A. LONG,<br><br>         Plaintiff,<br><br>     v.<br><br>ALAN BOTZHEIM, individually and as Pend Oreille County Deputy Sheriff, and RONALD FROMAN, individually and as Pend Oreille County Deputy Sheriff,<br><br>         Defendants. | NO. CV-04-344-EFS<br><br>**ORDER ENTERING RULINGS FROM SEPTEMBER 21-22, 2009 TRIAL** |

On September 21-22, 2009, the Court held a bench trial in the above-captioned matter.  Christopher J. Kerley appeared on behalf of Defendants; Patricia A. Long appeared *pro se*.  This Order serves to supplement and memorialize the Court's findings of fact and conclusions of law.

**I. Findings of Fact**

At trial, the Court heard testimony from Defendants Botzheim and Froman, Plaintiff Long, Detra Johnson, William Johnson, Leonard Browning, Dean Yongue, and Deputy Questin Youk.  Defendants also submitted

ORDER ~ 1

exhibits. The Court makes the following findings of fact after considering the exhibits and testimony:

1. This is a 42 U.S.C. §1983 case arising out of Plaintiff Patricia Long's second-degree trespass arrest on October 12, 2002, by Defendants Alan Botzheim and Ronald Froman of the Pend Oreille County Sheriff's Department.

2. Plaintiff Patricia Long owned a parcel of real property in Pend Oreille County.

3. Thomas Franklin owned a parcel of real property adjacent to Ms. Long's property.

4. Ms. Long claimed the boundary separating her property from Mr. Franklin's was an old fence line because she had acquired the land leading up to that line through adverse possession.

5. Mr. Franklin claimed the true property line was actually south of the old fence line, and that this true property line was established by a survey completed in 1998 by professional surveyor Dean Yongue and filed with Pend Oreille County.

6. On October 2, 2002, Mr. Franklin and Mr. Yongue visited the property for a resurvey.

7. At the request of Mr. Franklin, Sgt. Alan Botzheim and two (2) other Pend Oreille County Sheriff's Deputies, Questin Youk and Ronald Froman, attended to perform a civil standby to keep the peace during the survey.

8. At 9:35 a.m. on October 12, 2002, Sgt. Botzheim and Deputies Youk and Froman met with Mr. Franklin at his property. Sgt. Botzheim spoke

ORDER ~ 2

with Mr. Franklin, and Mr. Franklin showed him a copy of the survey that was completed in 1998 and filed with the County.

9. Sgt. Botzheim also spoke with Mr. Yongue, who advised that he was a licensed surveyor in Washington and Idaho. Mr. Yongue confirmed that he had done the survey in 1998 and that it was filed with the County.

10. Mr. Yongue showed Sgt. Botzheim a survey map indicating that the old fence line was within Mr. Franklin's property. There had been a monument marking the boundary, but it had been moved before October 12, 2002.

11. After this discussion with Mr. Franklin and Mr. Yongue, Sgt. Botzheim and Deputy Youk left the group and began walking southwest on the power line road, toward the fence and gate.

12. Sgt. Botzheim reached the gate and began to cross it when an adult male with a video camera, whom Sgt. Botzheim later identified as Leonard Browning, told Patricia Long to tell Sgt. Botzheim to get off her property.

13. In response to this direction from Mr. Browning, Ms. Long told Sgt. Botzheim to get off her property.

14. During the entire interaction, Mr. Browning had a strident attitude towards Sgt. Botzheim and Deputies Youk and Froman, and insisted forcefully on Ms. Long's rights.

15. Sgt. Botzheim explained who he was and why he was there. He also advised Ms. Long that Mr. Franklin and Mr. Yongue had shown him a survey which indicated that the property she was ordering him off was, in fact, Mr. Franklin's.

ORDER ~ 3

16. At this point, Sgt. Botzheim asked Ms. Long if she had anything to contradict the survey. Ms. Long replied that she did, but that she was not going to show Sgt. Botzheim anything, and that she would save her information for court.

17. During this time, Mr. Browning continued to record. He advised Sgt. Botzheim and Deputy Youk he was there assisting Ms. Long. Mr. Browning also indicated that he was with a group called "Citizens Against Corruption," and that the officers were trespassing. Several other members of Citizens Against Corruption were present at Ms. Long's behest in order to observe the survey.

18. Sgt. Botzheim asked Mr. Franklin to cross the fence and to show him the surveyed property line. Sgt. Botzheim re-examined the survey and confirmed, from both the survey map and the comments of Mr. Yongue and Mr. Franklin, that Ms. Long and the other members of her group were on Mr. Franklin's property.

19. Sgt. Botzheim advised the group that they would have to step back across the property line. All but Ms. Long complied.

20. Sgt. Botzheim then told Ms. Long that she would have to leave or be arrested. She replied that she would not leave, and told Sgt. Botzheim he should arrest her because she was on her property. Sgt. Botzheim then placed Ms. Long under arrest for second-degree criminal trespass and advised her of her rights. Ms. Long was taken into custody at 10:03 a.m.

21. On October 2, 2006, the Honorable Alan A. McDonald ruled, in granting summary judgment in favor of the defendants, that the arrest was supported by probable cause. On March 17, 2008, Judge McDonald's

ORDER ~ 4

probable cause determination was upheld by the Ninth Circuit Court of Appeals.

22. It was Pend Oreille County Sheriff's Department policy to handcuff all arrested persons who were placed in a patrol car for transport.

23. Pursuant to Department policy, after Sgt. Botzheim informed Ms. Long that she was under arrest, he asked her to turn around and place her arms behind her back so she could be handcuffed.

24. Ms. Long complied with Sgt. Botzheim's request, and Sgt. Botzheim placed metal handcuffs around Ms. Long's wrists, checking them for tightness by inserting his little finger between each cuff and Ms. Long's wrist.  The handcuffs were then double locked so the tightness of the cuff would not increase.  As a result of this process, the handcuffs were not excessively tight at any point after they were applied.

25. Sgt. Botzheim was a state-certified instructor in use of force and handcuffing, and both he and Deputies Youk and Froman were satisfied that he handcuffed Ms. Long consistent with Pend Oreille Sheriff's Department procedures.

26. Sgt. Botzheim then asked Deputy Froman to lead Ms. Long to Deputy Froman's patrol car and transport her to the Pend Oreille County Jail in Newport, Washington.  Ms. Long was fully compliant, and Deputy Froman placed his hand on Ms. Long's arm and led Ms. Long down a logging road toward his patrol car, which was 50-100 yards away from the disputed boundary.

27. When Deputy Froman and Ms. Long reached the patrol car, Deputy Froman opened the passenger-side back door and helped Ms. Long into the

back seat. Ms. Long was again compliant, and at no time during this process did Deputy Froman apply any force to Ms. Long other than leading her by the arm to the patrol car.

28. Before she was placed in handcuffs, neither Sgt. Botzheim nor Deputy Froman touched Ms. Long.

29. Deputy Froman left Ms. Long in the patrol car and returned to the disputed boundary. At 10:31 a.m., when the scene was secure, Deputy Froman began driving Ms. Long to the Pend Oreille County Jail in Newport.

30. Deputy Froman and Ms. Long arrived at the County Jail at 11:07 a.m. Deputy Froman led Ms. Long into the facility so she could be processed. Ms. Long was passive and compliant, and no force was applied to her during this process.

31. Ms. Long's processing into jail included a booking photo. That photo shows Ms. Long smiling and holding up the identification placard. This photo, Exhibit 504, does not show any visible injury, such as bruising or red marks, to Ms. Long's wrists. Ms. Long does not appear distressed or pained in the photo. Ms. Long's wrists do not now appear disfigured in any way.

32. During the entire process described above, Ms. Long was compliant and cooperative. As a consequence, neither Sgt. Botzheim nor Deputy Froman applied any force to Ms. Long.

33. At no time between her arrest and delivery to jail personnel in Newport did Ms. Long complain of physical pain or discomfort, from the handcuffs or any other source.

34. At no time between her arrest and delivery to jail personnel in Newport did Ms. Long display any behavior to Sgt. Botzheim or Deputy

Froman that led them to believe, or that should have led them to believe, that Ms. Long was in physical discomfort because of the handcuffs or for any other reason.

35. At all times during Sgt. Botzheim and Deputy Froman's interaction with Ms. Long at the disputed property line, Mr. Browning was holding a video camera, which was pointed toward Sgt. Botzheim and Deputy Froman. This led both to believe that Mr. Browning was videotaping the entire proceedings.

36. Ms. Long produced no video tape or photographs of her handcuffing or the application of any force to her person by Sgt. Botzheim or Deputy Froman.

37. The audio portion of the video tape taken by Mr. Browning is in evidence as Exhibit 505. On the tape, Mr. Browning can be heard narrating events as they unfolded, and making various statements and comments to Ms. Long and the Deputies at the scene. At no time during his recorded narration does Mr. Browning or anyone else comment that Sgt. Botzheim or Deputy Froman is applying any force to Ms. Long.

38. The audio portion of the video tape indicates that Sgt. Botzheim and Deputy Froman were courteous, measured, and professional, and that they did not use any force on Ms. Long.

39. Ms. Long did not suffer any physical injury as a result of her interactions with Sgt. Botzheim or Deputy Froman on October 12, 2002.

40. If Ms. Long experienced physical pain or discomfort as a result of her handcuffing, it was minimal, and Ms. Long did not complain of this pain or discomfort to Sgt. Botzheim or Deputy Froman.

**II. Conclusions of Law**

1. The test to assess whether the use of force applied during an arrest was excessive under the Fourth Amendment is whether the force used was objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

2. The factors considered under this test are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. These factors are to be considered in relation to the amount of force used in a particular seizure. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

3. Minimal force, such as the force required for ordinary handcuffing, is constitutionally insufficient to qualify as excessive. *See Jackson v. City of Bremerton*, 268 F.3d 646, 652–53 (9th Cir. 2001). Handcuffing that does not cause injury is a reasonable use of force. *See Arpin v. Santa Clara County Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001).

5. Because Sgt. Botzheim and Deputy Froman used only minimal force in handcuffing and transporting Plaintiff and caused no temporary or permanent injury, their physical contact with her was objectively reasonable under the circumstances. Therefore, they did not violate Plaintiff's Fourth Amendment right to be free from unreasonable seizure, and are not liable under section 1983.

ORDER ~ 8

Accordingly, it is hereby **ORDERED:**

1. Defendants' oral Motion to Dismiss pursuant to Federal Rule of Criminal Procedure 41(b) is **DENIED** as moot.

2. Judgment shall be entered in Defendants' favor.

3. All pending motions are **DENIED** as moot.

4. This case file shall be closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel and Ms. Long.

**DATED** this ___28TH___ day of September 2009.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
United States District Judge

Q:\Civil\2004\344.trial.wpd

ORDER ~ 9